**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ABRAHAM SOKOL,**

                      **Plaintiff,**

      *- against -*

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                    **Defendant.**[1]

**04 Civ. 6631 (KMK)(LMS)**

**REPORT AND**
**RECOMMENDATION**

---

**TO:   THE HONORABLE KENNETH M. KARAS,**
        **UNITED STATES DISTRICT JUDGE**

     Plaintiff Abraham Sokol (herein, "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's decision to deny him disability insurance benefits. See Docket #1, Complaint (herein, "Comp."). Plaintiff has filed a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) seeking reversal of the Commissioner's final decision and an order of remand to the Commissioner for a new administrative hearing. See Docket #9, Plaintiff's Notice of Motion and Affirmation (herein, "Sokol Aff."); Docket #10, Memorandum of Law (herein, "Pl's Mem."). The Commissioner has cross-moved for judgment on the pleadings under Rule 12(c) requesting dismissal of the Complaint and an order affirming the Commissioner's decision to deny Plaintiff disability benefits. See Docket #13, Commissioner's Notice of Cross-Motion. For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Commissioner's motion for judgment on the pleadings should be granted and that the Plaintiff's motion for judgment on the pleadings should be denied.

---

[1]     Pursuant to FED. R. CIV. P. 25(d)(1), the name of the new Commissioner of Social Security has been substituted for Jo Anne Barnhart who was the Commissioner of Social Security at the time this action was filed.

**BACKGROUND**

A.  Facts

The following undisputed facts are taken from the pleadings, affidavits, transcripts and other documents submitted in support of the instant cross-motions.  The majority of facts are taken from the transcript of the administrative hearing held before Administrative Law Judge Dennis G. Katz on August 8, 2001, and his decision affirming Plaintiff's denial of disability benefits on November 9, 2001.  See R. 35-41 (Administrative Law Judge's decision); 423-60 (transcript of hearing before Administrative Law Judge).

Plaintiff Abraham Sokol was born on January 22, 1947, in the Republic of Panama.  See Sokol Aff., Ex. A at ¶ 2.  Plaintiff received a medical degree in 1972, R. 30, and was employed as a radiologist until he was convicted of grand larceny and imprisoned in July of 1992, R. 39. Plaintiff was diagnosed with diabetes and hypertension during his period of incarceration.  R. 426.  Plaintiff testified at his administrative hearing that he suffered from several ailments during his period of incarceration, including high blood sugar levels, portions of his body feeling numb and asleep, tiredness and a lack of energy, and frequent urination.  R. 433-44.  Prison officials placed Plaintiff on a special diet and directed that he receive medication for his ailments in response to his diagnoses.  R. 273-331.  Although Plaintiff testified that his blood sugar levels remained abnormal despite this course of treatment, R. 435, Plaintiff's wife testified during the administrative hearing that the Plaintiff's medication lowered Plaintiff's blood sugar levels and controlled his hypertension during his period of incarceration, R. 450-51.

Plaintiff performed office work as a secretary during this time, which included tasks such as typing and filing.  R. 431.  Plaintiff testified that he worked for four to six hours a day, five days a week, during his incarceration, but was unable to work for longer periods of time because

of his disabilities. R. 431-32. Plaintiff participated in a work release program in 1994 and was released from jail on parole in May of 1995. R. 452. During his time on work release, Plaintiff was employed by Doctor Lawrence C. Roach as a clerk and worked approximately four hours a day for three months. R. 345, 444. Upon his release from prison, Plaintiff completed training as a paralegal, R. 102, and was employed by a law firm in Manhattan performing legal research for six months beginning in May of 1995, R. 436-37.

Plaintiff testified during his administrative hearing that he worked on his criminal appeal for about twelve hours a day, seven days a week from 1995 to 1997. R. 438. Plaintiff's counsel has tried to clarify this statement by offering that the Plaintiff's definition of "work" included "thinking about [his] appeal." See Sokol Aff., Ex. A at ¶ 17. Plaintiff alleges that after he lost his appeal he became depressed and stopped working but did not seek psychiatric counseling. R. 439. Plaintiff's wife testified during the administrative hearing that despite Plaintiff's allegations of depression he gets along well with others and is able to take care of his personal daily needs. R. 457.

Plaintiff testified during his administrative hearing that although he cannot presently perform physical work he can do intellectual work. R. 440. Although Plaintiff worked in Manhattan following his release from prison, Plaintiff claims that he is no longer able to travel to Manhattan because of his illness. R. 441. Plaintiff conceded that if he could continue his employment in Scarsdale, his town of residence, he would. Id. Plaintiff also conceded that, although prohibited by law, he is physically capable of reviewing medical records for an insurance company or a lawyer, R. 442, and that he has looked for work as a receptionist, R. 443.

B. Plaintiff's Applications and Period of Disability Coverage

Plaintiff initially filed an application for disability benefits on July 19, 2000, alleging a disability onset date as of January 1, 1993. R. 76. On July, 12, 2000, prior to submitting the July 19, 2000, application, however, Plaintiff spoke with Lawrence Deer, a personnel member of the Social Security Administration, and stated that that his disability onset period began on January 1, 1997. R. 108 (notation of Social Security Administration personnel). In processing Plaintiff's July 19, 2000, disability benefits application, the Social Security Administration therefore noted that the onset of Plaintiff's disability was January 1, 1997. R. 76-77. Plaintiff's application, however, contains handwritten modifications to this disability onset date that are initialed by the Plaintiff that specify that the proper disability onset date is January 1, 1993. Id.

Plaintiff signed and dated a second application for disability benefits on July 26, 2000, in which Plaintiff alleged a disability onset date as of July 15, 1992.[2] R. 78. Plaintiff noted in this application that his disabilities consisted of diabetes, bilateral cataract surgery, neuropathy, high blood pressure, coronary artery disease, congestive heart failure, high cholesterol, liver disease, and depression. R. 96. Administrative Law Judge Katz found that for the purposes of determining whether the Plaintiff was entitled to disability insurance benefits the Plaintiff's disability period began on July 15, 1992, which is the earliest date the Plaintiff claimed he was unable to work because of his disabilities, and ended on March 31, 1996, the date Plaintiff was last insured for disability benefits. R. 40; see also 42 U.S.C. §§ 423(a)(1)(A); 423(c)(1).

C. Administrative Law Judge Katz's Decision

Administrative Law Judge Katz held a hearing on August 8, 2001, following the Social Security Administration's denial of Plaintiff's application for benefits on December 8, 2000. R.

---

[2] This application is stamped as received by a Social Security field office on August 16, 2000, and is referenced by the Commissioner in his Memorandum of Law as having been filed by the Plaintiff on this date. See Commissioner's Mem. at p. 2.

423-60. Plaintiff and his wife, Dr. Robyn Deutsch-Sokol, testified at the hearing. R 35-36. Plaintiff, who was not represented by counsel during this proceeding, acknowledged that he received notice from Administrative Law Judge Katz that he had a right to be represented during the hearing and waived this right. R. 35-36; 423-24. During the hearing Administrative Law Judge Katz elicited Plaintiff's work history, the nature of Plaintiff's limitations and disabilities during his period of incarceration, the efforts Plaintiff made to obtain work after his release from prison, and the degree of pain Plaintiff claimed to experience. R. 423-60. At the conclusion of the hearing, Administrative Law Judge Katz gave Plaintiff an additional period of time to supplement the record with additional evidence and asked Plaintiff to report back to him within one month with any further information Plaintiff wanted to be included in the record. R. 443-45.

On November 9, 2001, Administrative Law Judge Katz issued his opinion denying the Plaintiff's claim to an entitlement to disability insurance benefits. R. 35-41. Administrative Law Judge Katz found that the Plaintiff did not establish a disability as defined under the Social Security Act during his disability insurance coverage period from July 15, 1992, to March 31, 1996. R. 41. Administrative Law Judge Katz determined that the Plaintiff did not engage in substantial gainful activity during the period in question because of his incarceration and that the Plaintiff's alleged disabilities were " 'severe' within the meaning of the Social Security Act and the regulations because they might have tended to impose more than a slight limitation on the [Plaintiff's] abilities to perform work-related activities." R. 38. Administrative Law Judge Katz noted, however, that he only considered the disabilities Plaintiff claimed to have endured during the Plaintiff's disability period – from July 15, 1992, to March 31, 1996 – and that he did not assess any evidence submitted to him for consideration that fell outside of this temporal limitation, such as evidence pertaining to Plaintiff's bypass surgery in 1998. R. 37.

Administrative Law Judge Katz concluded that the Plaintiff's limitations did not meet the degree of severity equal to or in excess of the criteria listed in Appendix 1 of the social security administrative regulations and that the Plaintiff therefore retained the functional physical capacity to perform his past work as a physician.  R. 39-40.

D.    The Medical Evidence Considered by the Administrative Law Judge and New Evidence Presented to the Appeals Council

In support of his application for disability benefits, Plaintiff argued that his disabilities became more acute during his period of incarceration and that his medical records and work history during this time period supported his application for disability benefits based upon his inability to work after he was released from prison.  Administrate Law Judge Katz therefore subpoenaed Plaintiff's medical records from the New York State Department of Correctional Services for the period from September 16, 1992, the date Plaintiff began his period of incarceration, to July 6, 1995, the date the Plaintiff was released on parole.  These records were received.  R. 273-310.  The Fishkill Correctional Facility, where Plaintiff was incarcerated, also maintained records covering Plaintiff's second period of incarceration from January 25, 2000, to February 10, 2000, and provided them in response to Administrative Law Judge Katz's subpoena for documents.  R. 311-13.  As explained by the Administrative Law Judge, however, these records were outside of the Plaintiff's disability insurance period and were not germane to the Administrative Law Judge's determination about Plaintiff's disabled status.

Plaintiff's prison medical records reflect that the Plaintiff was prescribed Glucotrol and Diabeta for his diabetes and Lopressor, Tenormin, and Atenol for his hypertension.  R. 276.  The Plaintiff's prison medical records also indicate that the Correctional Facility placed Plaintiff on a special diet to help control his diabetes. R. 329-30.  In addition to diabetes and hypertension, the Plaintiff's prison medical records indicate that Plaintiff suffered from other minor ailments

during his period of incarceration, including dizziness, dry skin, back pain, R. 279, periodic cold symptoms, R. 284, and a rash on his upper thighs, red lesions on his skin, and athlete's foot, R. 304. Plaintiff's prison medical records contain a variety of other minor complaints Plaintiff lodged during his period of incarceration. R. 274, 279, 286, 291, 292, 295, 312.

The administrative record also contains information about the Plaintiff's medical history that falls outside of the Plaintiff's period of disability coverage. As made clear by Administrative Law Judge Katz, the pertinent period in question is from July 15, 1992, to March 31, 1996; Plaintiff has not challenged the accuracy of these dates as the proper period of disability coverage. Plaintiff's medical records generated during his second period of incarceration, which fell outside of Plaintiff's period of disability coverage, note that Plaintiff had triple bypass surgery in 1998. R. 313. Plaintiff also asserts that he was diagnosed with cataracts in 1984 and underwent bilateral eye operations in 1985 and in 1986. See Sokol Aff. at ¶4. Plaintiff claims that a result of his cataracts surgery he cannot be in large crowds and must be careful not to sustain any trauma to his eyes. Id.

In addition to the Department of Correctional Services' medical records, Administrative Law Judge Katz received a letter from Dr. Lynn Herkowitz-Deutsch, Plaintiff's sister-in-law, dated October 12, 2001. R. 336. Dr. Herkowitz-Deutsch is board certified in general and geriatric psychiatry. R. 336. Dr. Herkowitz-Deutsch claimed she was familiar with the Plaintiff's medical, psychiatric, and psychosocial behavior and that it was her medical opinion that the Plaintiff suffered from "a long history of unrecognized major affective disorder that interfered significantly with his interpersonal and vocational functioning, and ability to make decisions." R. 336. Dr. Herkowitz-Deutsch based her opinion on her personal observations of the Plaintiff's "episodes of illness characterized by seclusiveness, suspiciousness, grandiosity,

expansiveness, appetite and sleep disturbances, impulsiveness, hostility, and marked affective lability." R. 336. Dr. Herkowitz-Deutsch stated that Plaintiff resisted her recommendations that he receive a "formal psychiatric evaluation and treatment," R. 336, and identified Plaintiff's psychological condition as the reason why he was unable to maintain employment, R. 336.

Subsequent to Administrative Law Judge Katz rendering his decision, the Appeals Council received opinion letters from four physicians each claiming to have knowledge about Plaintiff's medical condition and disabilities. The Appeals Council received correspondence from Dr. Lawrence Roach, Dr. Robyn Deutsch-Sokol, the Plaintiff's wife, Dr. Dennis Gage, and Dr. Slobodan Aleksic. R. 345-51. The Appeals Council considered these opinion letters in the course of reviewing and upholding Administrative Law Judge Katz's decision. R. 5.

Dr. Roach, for whom Plaintiff worked during Plaintiff's work release program, submitted a letter to the Appeals Council dated April 16, 2004. R. 345-46. Dr. Roach explained that he and the Plaintiff completed their post-graduate studies together at Mount Sinai Hospital and that he employed the Plaintiff as a part of the Plaintiff's work release program in 1994. Id. Dr. Roach offered that during the six months that Plaintiff worked for him, "[Plaintiff] was in poor physical and mental health." Id. Dr. Roach additionally commented that Plaintiff was "obese depressed [sic] and on diabetic and anti-hypertensive medication prescribed by the prison doctor. He was severely depressed and disheveled." Id. Dr. Roach also opined that Plaintiff's blood sugar was not under control at this time and that he had come to this conclusion upon reviewing the Plaintiff's prison medical records and upon conducting an examination of the Plaintiff on January 4, 2002. Id.

Plaintiff designated Dr. Roach as his treating physician in his application for disability benefits dated July 26, 2000. R. 98. During his administrative hearing, Plaintiff noted that he

began seeing Dr. Roach in 1994 for depression, hypertension, diabetes and congestive heart failure.  Id.  Plaintiff emphasized to Administrative Law Judge Katz during his administrative hearing hat he wanted Dr. Roach's medical records to be included in the administrative record and to be reviewed and considered in support of his application for disability benefits.  See R.443-45.  Administrative Law Judge Katz gave the Plaintiff an additional month to secure the medical information from Dr. Roach and instructed the Plaintiff to report back to him by September 10, 2001, to inform him whether Dr. Roach evaluated the Plaintiff and whether the Plaintiff was able to secure any additional documentation from Dr. Roach.  R. 445.  On October 26, 2001, Plaintiff corresponded with Administrative Law Judge Katz and informed him that he had contacted Dr. Roach's office and was told that "[Doctor Roach] will be busy probably till the middle of December."  R. 68.

Dr. Dennis Gage, an internist specializing in internal medicine and endocrinology, also claims to have treated the Plaintiff since 1994.  R. 347.  Dr. Gage asserted in his letter to the Appeals Council that he reviewed Plaintiff's prison medical records and diagnosed him with "diabetes type 2 out of control, blood sugar elevation with poor control of diabetes over the years at some points blood sugars higher than 500 causing mental status changes and inability to perform a level of work that is expected of a radiologist."  Id.  Dr. Gage further stated that Plaintiff "is unable to practice . . . radiology" and "has had difficult (sic) in simply walking, lifting, and moving around."  Id.

In a letter to the Appeals Council dated April 19, 2004, Dr. Slobodan Aleksic, a neurologist and neuro-psychiatrist, claims to have psychiatrically treated the Plaintiff since January of 1994.  R. 348.  Dr. Aleksic stated that it was his medical opinion that the Plaintiff suffered from bipolar disorder and that he likely suffered from bipolar disorder prior to his

incarceration.  R. 348-49.  Dr. Aleksic noted that he came to these medical conclusions upon reviewing the Plaintiff's testimony before Administrative Law Judge Katz, upon reviewing Dr. Herkowitz-Deutsch's letter to the Administrative Law Judge, and upon conversing with the Plaintiff and his wife.  R. 349.

Dr. Robyn Deutsch-Sokol, Plaintiff's wife, who is board certified in pediatrics and ophthalmology, also wrote to the Appeals Council in April of 2004.  R. 350.  In her letter Dr. Deutsch-Sokol asserted that she diagnosed the Plaintiff with cataracts in 1985 and with severe depression between 1994 and 1995.  R. 350.  Dr. Deutsch-Sokol informed the Appeals Council that she had to obtain a restraining order against the Plaintiff because of his depression and paranoia in 1996 and in 1997, and that they were separated during this period of time.  R. 350-51.  Dr. Deutsch-Sokol also offered that she had made diagnoses concerning Plaintiff's coronary condition and limited mobility.  R. 351.  According to Dr. Deutsch-Sokol, however, these diagnoses were made in 1997 and 2002.  R. 351.

Following the receipt of this information, the Appeals Council affirmed the decision of Administrative Law Judge Katz and denied Plaintiff's request for disability insurance benefits. R. 5-9.  The Appeals Council's decision became the Commissioner's final decision and this timely request for judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) followed.

**DISCUSSION**

A.  Standard of Review

A party may move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial."  FED. R. CIV. P. 12(c).  When considering a Rule 12(c) motion for judgment on the pleadings, "the court must view the pleadings in the light most

favorable to, and draw all reasonable inferences in favor of, the nonmoving party." <u>Madonna v. U.S.</u>, 878 F.2d 62, 65 (2d Cir. 1989). The moving party is entitled to judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d. 639, 642 (2d Cir. 1988).

Section 405(g) of Title 42 of the United States Code empowers a social security claimant to seek judicial review of the Commissioner of Social Security's final decision denying the claimant's application for disability benefits. District Courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). It is not "the function of a reviewing court to decide de novo whether a claimant was disabled." <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999). Certain matters, such as resolving conflicting evidence and rendering credibility determinations, remain within the sole province of the administrative law judge and are not properly presented to the district court for de novo review. <u>See</u>, <u>e.g.</u>, <u>Veino v. Barnhart,</u> 312 F.3d 578, 586 (2d Cir. 2002).

Upon review of the administrative record, a district court may affirm, modify or reverse the Commissioner's decision, or remand the case for rehearing. 42 U.S.C. § 405(g). A court must affirm the Commissioner's decision if it is supported by substantial evidence and if the proper legal standards were observed. <u>See</u> <u>Beauvoir v. Chater</u>, 104 F.3d 1432, 1433 (2d Cir. 1997). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). A court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and

the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. <u>See</u> 42 U.S.C. § 405(g); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000).

B.      <u>Plaintiff's Arguments in Support of Reversal of Commissioner's Final Decision</u>

Plaintiff advances several arguments in support of reversal of the Commissioner's final decision to deny him disability insurance benefits.  Plaintiff alleges that the Administrative Law Judge denied him a fair hearing by conducting the hearing in the absence of counsel, that the Administrative Law Judge failed to develop the record sufficiently, and that the Administrative Law Judge's determination that the Plaintiff was not disabled and retained the ability to perform his past work was erroneous.  Plaintiff also raises a variety of minor alleged defects in the administrative proceeding that he contends warrants reversal of the Commissioner's final decision, such as the Administrative Law Judge's failure to inquire into the meaning of certain words used by the Plaintiff during the administrative hearing, his failure to inquire into the limitations placed on Plaintiff's ability to work while incarcerated, and his failure to inquire into whether Plaintiff could legally drive or legally perform certain employment functions.  <u>See</u> Sokol Aff. at ¶¶5-10.

As correctly argued by the Commissioner in his Memorandum of Law, any argument raised by the Plaintiff pertaining to the non-medical limitations on the Plaintiff's ability to work were properly disregarded by the Administrative Law Judge because these non-medical limitations fail to establish medical disabilities that impaired or limited the Plaintiff's ability to work.  <u>See</u> Commissioner's Mem. at p. 12-13 (citing 42 U.S.C. § 423(d)(1)(A) and <u>Barnhart v. Walton</u>, 535 U.S. 212, 217 (2002)).  As such, the Court will only consider the Plaintiff's challenges to the decision of the Administrative Law Judge that are based upon a review of the Plaintiff's disabilities and medical conditions.  Any argument that the Administrative Law Judge

should have inquired into limitations placed on Plaintiff's ability to work because of his

incarceration, or into any limitations that were placed on Plaintiff's ability to work upon his

release because of his prior conviction, is without merit.  See, e.g., Sokol Aff. at ¶¶9, 10

(identifying Administrative Law Judge's errors as including failure to inquire into whether

Plaintiff attempted to secure work in local community or whether Plaintiff was eligible to drive).

Despite Plaintiff's counsel's import in her affidavit, Plaintiff is not entitled to disability insurance

benefits because Plaintiff "look[ed] for jobs in Scarsdale, but was unsuccessful."  See Sokol Aff.

at ¶9.  Social security disability benefits are awarded upon a substantiated finding of a claimant's

medical inability to work because of his or her disabilities and not because he or she is unable to

secure employment in his or her local community.

    1.  Commissioner's Disability Determination

In order to be eligible for disability benefits, a claimant must establish the onset of a

disability during the period in which the claimant was insured for disability benefits.  See 42

U.S.C. § 423 (a)(1)(A).  If a clamant has a preexisting condition that does not become disabling

until after the expiration of the insured period, the claimant is not entitled to disability benefits.

Koss v. Schweiker, 582 F. Supp. 518, 522 (S.D.N.Y. 1984).  Disability is defined as an "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A claimant's impairment must be "of such severity that he [or she] is not only unable to do his

[or her] previous work but cannot, considering his [or her] age, education, and working

experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step inquiry that administrative law judges must follow when assessing whether a claimant is disabled within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520. Step one directs the Administrative Law Judge to determine whether the claimant has engaged in substantial gainful employment. If the claimant has not engaged in substantial gainful employment, the Administrative Law Judge's inquiry proceeds to step two, which requires the Administrative Law Judge to assess the severity of the claimant's alleged impairments or disabilities. If a claimant's impairments qualify as severe, the Administrative Law Judge must next consider whether the claimant has an impairment that meets one of the listings in Appendix 1 of the social security regulations. If the claimant has an impairment that meets one of the listings in Appendix 1, the claimant is considered disabled within the meaning of the statute and is entitled to disability insurance benefits; if the claimant does not have an impairment that meets one of the listings in Appendix 1, the Administrative Law Judge must proceed to step four, where he or she assesses the claimant's functional residual capacity and determines whether the claimant can perform his or her past relevant work. If the Administrative Law Judge determines that the claimant can perform his or her past relevant work, the claimant is not disabled; if the Administrative Law Judge determines that the claimant cannot perform past relevant work, the inquiry proceeds to step five. At step five, the Administrative Law Judge assesses the claimant's residual functional capacity, age, education, and work experience in order to determine if the claimant can perform other gainful employment that is available in the national community. See 20 C.F.R. § 404.1520; Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).

The burden is on the claimant to establish his or her disability, which encompasses the first four steps of the Administrative Law Judge's inquiry. See Bush v. Shalala, 94 F. 3d 40, 45

(2d Cir. 1996). At step five, the burden shifts to the Commissioner. Id. An Administrative Law Judge must consider the entire record, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience" when proceeding through the five step disability analysis. See Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

Administrative Law Judge Katz determined that the Plaintiff retained his residual functional capacity to perform the actual functional demands and job duties of his past relevant work and that he therefore was not disabled during the time period in question. R. 40. Plaintiff claims that the Administrative Law Judge's decision is not supported by substantial evidence because he failed to take into account the effects of Plaintiff's medication, see Sokol Aff. at ¶19, and that the Administrative Law Judge's credibility findings were flawed because they did not incorporate Plaintiff's subjective complaints of pain, discomfort, and other physical limitations, see Pl's Mem. at p. 12.

Despite Plaintiff's assertions, I conclude, and respectfully recommend that Your Honor should conclude, that the Administrative Law Judge's decision is supported by substantial evidence. The Administrative Law Judge specifically acknowledged that he considered Plaintiff's complaints about the side effects caused by his medication when he evaluated the severity of Plaintiff's impairments and the Administrative Law Judge concluded that Plaintiff's work history during his period of incarceration and after his release from prison contradicted his testimony regarding his impairments and degree of pain. R. 38-39. In support of these conclusions, Administrative Law Judge Katz noted that Plaintiff himself testified that he worked four to six hours a day while incarcerated and that he worked on his own appeal of his state court

criminal conviction upon his release from prison.  R. 39.  Although Plaintiff's counsel argues

that Administrative Law Judge Katz's failed to inquire into what Plaintiff subjectively meant by

"work on his appeal," <u>see</u> Sokol Aff. at ¶6, regardless of Plaintiff's personal meaning of term

"work," Administrative Law Judge Katz concluded that the fact that the Plaintiff was able to

work on his own appeal at all was some evidence of the Plaintiff's functional ability to work that

contradicted his allegations of complete disability.  <u>See</u> R. 39 (noting that Plaintiff's ability to

work on and argue his own appeal demonstrated Plaintiff's "intellectual and mental ability").

Plaintiff's additional allegation that the Administrative Law Judge gave no weight to the

letters of Doctors Herkowitz-Deutsch and Deutsch-Sokol is unfounded.  As explained above, Dr.

Herkowitz-Deutsch is Plaintiff's sister-in-law, and Dr. Robyn Deutsch-Sokol is Plaintiff's wife.

Administrative Law Judge Katz explicitly stated that he attributed little evidentiary value to these

letters because of the absence of any treatment history between the Plaintiff and these doctors,

because the opinions were rendered retrospectively, and because Plaintiff did not allege a mental

impairment in his application for disability benefits.  R. 37.  Although treating physicians are

permitted to render retrospective opinions that may be entitled to the deferential standard under

the treating physician rule, <u>see</u>, <u>e.g.</u>, <u>Dousewicz v. Harris</u>, 646 F.2d 771, 774 (2d Cir. 1981),

Administrative Law Judge Katz determined that the opinions of Doctors Herkowitz-Deutsch and

Deutsch-Sokol were not based on their own treatment of the Plaintiff and thus were not rendered

in the course of a physician-patient relationship.  <u>See</u> R. 37 n.4

A review of the administrative record leads me to conclude that Administrative Law

Judge Katz's decision is supported by substantial evidence in the record.  Both the Plaintiff and

Dr. Deutsch-Sokol admit that records were provided to Dr. Deutsch-Sokol for the sole purpose of

rendering an opinion on Plaintiff's disabled status.  <u>See</u> R. 156 (letter from Dr. Robyn Deutsch-

Sokol, dated August 8, 2001); R. 68 (letter from Plaintiff, dated October 26, 2001). In the correspondence provided by Dr. Herkowitz-Deutsch, Dr. Herkowitz-Deutsch offered that her opinions were based upon her personal observations of the Plaintiff and at no point suggests that she officially treated the Plaintiff or maintained any consistent records of treatment history for the Plaintiff covering the time period in question. R. 336-37. Absent any other information that would tend to support the opinions of Plaintiff's family members, the Plaintiff has not established that Administrative Law Judge Katz committed error by ascribing minimal weight to his family members' personal medical diagnoses rendered for the purpose of establishing his claim of disability.

Plaintiff also contends that the Administrative Law Judge incorrectly considered Plaintiff's demeanor while testifying during the administrative hearing. Plaintiff alleges that such consideration of the Plaintiff's demeanor resulted in a decision not based solely on an evaluation of the Plaintiff's medical records. See Sokol Aff. at ¶ 18. The applicable Social Security regulations, 20 C.F.R. 404.1545 in particular, however, allow an Administrative Law Judge to consider a variety of evidence when assessing a claimant's residual functional capacity, including "observations of [claimant's] limitations." See 20 C.F.R. §404.1545. Thus, contrary to Plaintiff's assertion of legal error, the Administrative Law Judge did not commit error when he considered Plaintiff's demeanor in rendering his decision that the Plaintiff retained a functional ability to perform past employment. Moreover, Plaintiff's subjective complaints of limitations, pain, and disabilities, alone, cannot establish a claim for an entitlement to disability insurance benefits. See, e.g., Brockway v. Barnhart, 94 Fed. Appx. 25, 28 (2d Cir. 2004) ("Contrary to [claimant's] assertions, moreover, his subjective assertions of pain could not

provide a basis for satisfying the diagnostic criteria required for a finding of presumptive disability.").

    2.  Plaintiff's Pro Se Status

Plaintiff also challenges the propriety of the Commissioner's final decision on the ground that he was denied a full and fair hearing because he was not represented by counsel during the administrative hearing.  See Sokol Aff. at ¶11.  It is well established in the Second Circuit that an Administrative Law Judge is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding.  See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  When a claimant proceeds *pro se*, the Administrative Law Judge's responsibilities to develop the record fully are heightened.  See Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (citing Hankerson v. Harris, 636 F.2d 893, 894 (2d Cir. 1980)).  Part of the Administrative Law Judge's heightened duty when evaluating disability claims of *pro se* claimants is to ensure that the claimant is aware of his or her right to be represented by counsel during the administrative proceedings.  Robinson v. Sec'y of Human Health & Servs., 733 F.2d 255, 257 (2d Cir. 1984); Johnson v. Barnhart, 03 Civ. 4606 (PCK), 2006 WL 1063195, at *7 (S.D.N.Y. April 20, 2006).

Plaintiff's perfunctory claim that he was denied a full and fair hearing because he was not represented by counsel during the hearing is without merit.  Administrative Law Judge Katz referenced Plaintiff's right to have an attorney at the outset of the Plaintiff's administrative hearing, referred to a notice that was sent to the Plaintiff prior to the hearing that informed the Plaintiff of this right, and questioned the Plaintiff about his desire to have an attorney present during the hearing.  R. 423-24.  The notice, which is included in the administrative record,

informed the Plaintiff of the possibility of obtaining free legal services and contained

information about how to secure such representation. R. 58-59. This notice complies with the

regulations promulgated by the Social Security Administration pertaining to a claimant's right to

counsel. See 20 C.F.R. §§404.938, 404.1706, 416.1506, 416.1507. Administrative Law Judge

Katz offered to postpone the hearing to allow Plaintiff the opportunity to obtain counsel. R. 424.

Plaintiff's response, which was that he "[didn't] need [an] attorney at this time," was

unequivocal, and at no point during the hearing did Plaintiff suggest that he believed he needed

to obtain counsel. Id. Plaintiff's post hoc argument that he was prejudiced by lack of counsel

during his administrative hearing is thus without merit.

    3. Duty to Develop Record and New Evidence Presented to Appeals Council

    Plaintiff also claims that the record was underdeveloped by the Administrative Law

Judge in light of his failure to obtain the medical records and report of Dr. Roach, a physician

whom the Plaintiff designated as a treating physician in his application for disability benefits.

See Sokol Aff. at ¶ 28; R. 98. Although the undersigned has some concerns about the procedure

the Administrative Law Judge used in the process of obtaining medical records from Dr. Roach,

I nevertheless conclude, and respectfully recommend that Your Honor should conclude, that the

weight of the evidence in the administrative record supports Administrative Law Judge Katz's

decision and that the Administrative Law Judge's actions do not provide a valid basis upon

which to remand the Plaintiff's application for disability insurance benefits to the Commissioner

for further consideration.

    The Second Circuit has defined a "treating physician" as "the claimant's 'own physician,

osteopath or psychologist (including outpatient clinic and health maintenance organization) who

has provided the individual with medical treatment or evaluation, and who has or who had an

ongoing treatment and physician-patient relationship with the individual.' " Schisler v. Bowen, 851 F.2d 43, 46 (2d Cir. 1988). In crafting this definition of a "treating physician," the Second Circuit implicitly observed that whether a particular physician qualifies as a "treating physician" is an inherently case-specific analysis that is predicated upon the nature of the relationship between the patient and the physician. See Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989). Under the regulations and Circuit case law, an Administrative Law Judge has the affirmative duty to obtain medical evidence from a plaintiff's treating physician. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (noting Administrative Law Judge's duty to develop the record); 20 C.F.R. §404.1512(d) (explaining obligation of Administrative Law Judge to obtain the records of a treating physician).

The status of Dr. Roach as a treating physician appears to be in dispute and the administrative record does not clarify Dr. Roach's appropriate designation. Plaintiff noted on his disability benefits application that Dr. Roach served as one of his treating physicians beginning in 1994. R. 98. Plaintiff noted in his disability benefits application that he saw Dr. Roach for treatment for several ailments, including depression, hypertension, diabetes and congestive heart failure. Id. According to Plaintiff and the evidence within the administrative record, however, Plaintiff did not suffer from congestive heart failure until 1998, which is outside of the disability insurance period. Moreover, Plaintiff began working for Dr. Roach in 1994 as part of his work release program from prison and Plaintiff has been unable to supply any medical records or other evidence that would tend to support his assertion that he was being treated by Dr. Roach as a patient in 1994.

As noted above, Plaintiff requested that Administrative Law Judge Katz assist him in retrieving medical evidence and records from Dr. Roach during his administrative hearing. In

Plaintiff's follow up correspondence to Administrative Law Judge Katz, however, Plaintiff explained that Dr. Roach experienced his own "personal problems" and was not able to supply any documentation for the Plaintiff until December of 2001. R. 68-69. It is unclear from the administrative record exactly what steps the Administrative Law Judge took to assist the Plaintiff to obtain such records, assuming that such records existed. Toward the end of the administrative hearing, Administrative Law Judge Katz gave the Plaintiff an additional month to secure documentation from Dr. Roach. It is not clear to the undersigned whether the Administrative Law Judge's permissive instruction to the Plaintiff that he should affirmatively develop his own medical history comports with the honored rule that the Administrative Law Judge must develop the record, especially when the claimant proceeds *pro se*. <u>See</u>, <u>e.g.</u>, <u>Oliveras v. Astrue</u>, 07 Civ. 2841 (RMB)(JCF), 2008 WL 2262618, at *5-6 (S.D.N.Y. May 30, 2008) (describing affirmative duty of administrative law judge to develop record, including issuing subpoenas to treating physicians).

I conclude, however, and respectfully recommend that Your Honor should conclude, that the propriety of the Administrative Law Judge's actions or inactions in obtaining records from Dr. Roach does not impact the instant recommendation that the Commissioner's denial of disability benefits should be affirmed. First, it appears from the record that the Administrative Law Judge harbored some suspicion about the status of Dr. Roach as a treating physician. As explained <u>supra</u>, the status of Dr. Roach as a treating physician during 1994 when the Plaintiff was working for Dr. Roach on work release from prison appears questionable. Additionally, Plaintiff identified Dr. Roach as a treating physician for ailments that the Plaintiff did not experience until after 1994 and until after his period of disability insurance coverage expired.

Thus, whether Dr. Roach was one of the Plaintiff's treating physicians in 1994 appears to be in dispute.

Second, and more important to the instant recommendation, Plaintiff submitted additional evidence to the Appeals Council from Dr. Roach that does not alter the weight of the evidence relied upon by the Administrative Law Judge in rendering his opinion. Evidence that is submitted to the Appeals Council, but that is not presented to the Administrative Law Judge, is considered part of the administrative record that the district court reviews under 42 U.S.C. § 405(g) and may be assessed and considered by the district court in the course of analyzing whether the Commissioner's final decision is supported by substantial evidence. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996); 20 C.F.R.§404.970(b). In this case, however, the undersigned agrees that the new evidence submitted to the Appeals Council from Dr. Roach does not alter the Administrative Law Judge's analysis in light of the cursory nature of Dr. Roach's letter. R. 345-46.

In his letter to the Appeals Council, Dr. Roach concedes that he began his relationship with the Plaintiff as a social acquaintance in medical school and "next encounter[ed]" Plaintiff when he "agreed to supervise and employ him as a clerk in [his] office on a work release program . . . " in 1994. R. 345. Dr. Roach then offers his opinion about Plaintiff's condition at the time he was working for him in 1994 based upon his personal observation of the Plaintiff. Id. Dr. Roach offers no specifics about any treatment history or course of treatment he prescribed for the Plaintiff during this time and fails to explain any medical diagnoses he made during the course of a physician-patient relationship he maintained with the Plaintiff during this time. Id. Dr. Roach concedes that his observations are based upon his review of the Correctional Facility's medical records and reports provided to him. R. 346. Dr. Roach further notes that he examined

22

the Plaintiff and performed tests on the Plaintiff in 2002, which is after the close of the Plaintiff's disability insurance period.  Id.

Under the test developed by the Second Circuit, it appears to the undersigned that Dr. Roach was not a treating physician of the Plaintiff during Plaintiff's disability insurance period, and to the extent that Dr. Roach could be considered to be a treating physician during this time, it appears to the undersigned that Dr. Roach failed to offer a medical diagnosis based upon medical evidence in the administrative record that could undermine the weight of the evidence or alter the Administrative Law Judge's conclusion.  The Appeals Council's election to disregard Dr. Roach's 2002 examination and assessment of the Plaintiff is supported by the fact that this analysis was performed after the Plaintiff applied for disability benefits and therefore has no connection to the disabilities Plaintiff claims he endured during the disability period in question. Additionally, Dr. Roach has not provided any medical records evincing his treatment of the Plaintiff in 1994; Dr. Roach did not even state that he treated the Plaintiff in 1994.  R. 345-46. For these reasons I conclude, and respectfully recommend that Your Honor should conclude, that neither the Administrative Law Judge nor the Appeals Council committed legal error with respect to the information provided by Dr. Roach and that the new evidence he presented to the Appeals Council does not outweigh the evidence in the administrative record supporting the Administrative Law Judge's determination that the Plaintiff was not disabled.

Plaintiff also claims that Administrative Law Judge Katz did not fully develop the record because he was unable to obtain medical records from Westchester Medical Center.  See Sokol Aff. at ¶ 25.  Plaintiff, however, acknowledges in his moving papers that the records from Westchester County Medical Center are no longer available because such records are only kept for up to ten years after a patient has been discharged.  See Sokol Aff., Ex. B.  The

Administrative Law Judge, therefore, could not have neglected his obligation to develop the administrative record when the documents he may have been obligated to obtain did not exist.

Plaintiff additionally advances that Administrative Law Judge Katz erred when he did not order an independent psychiatric evaluation of the Plaintiff and when he failed to investigate the status of Plaintiff's psychiatric condition. See Sokol Aff. at ¶ 12. Upon a review of the administrative record, however, I conclude, and respectfully recommend that Your Honor should conclude, that the Administrative Law Judge was not under a duty to have the Plaintiff's mental state evaluated because Plaintiff failed to present evidence from a treating physician regarding his mental state and because the opinions of the Plaintiff's consulting physicians were contradicted by evidence elicited during the administrative hearing. As explained above, Dr. Deutsch-Sokol and Dr. Herkowitz Deutsch's opinions were based upon their social relationships with the Plaintiff, not on any physician-patient relationship. See supra at pp. 16-17. The record contains no indication that either of these doctors qualified as a treating physician. Further, an evaluation of the Plaintiff's current mental state would not assist the court in determining if the Plaintiff suffered from a psychological disability during the relevant time period as there is no other evidence in the record to support of a claim of disability insurance benefits based upon a mental disease or defect suffered by the Plaintiff from 1992 to 1996. The tenor of Plaintiff's application for disability benefits is based upon Plaintiff's alleged disabilities resulting from diabetes and hypertension. To the extent that the Plaintiff claims he was "depressed," it does not appear that he sought treatment for such depression during the disability insured period, and the doctors' post hoc diagnoses of "unrecognized major affective disorder," R. 336, is not supported by any other medical evidence in the administrative record. Plaintiff's argument that the

Administrative Law Judge erred by failing to explore Plaintiff's alleged mental disabilities in 2001 is therefore without merit.

The remainder of the "new evidence" Plaintiff presented to the Appeals Council does not persuade the undersigned that such new evidence outweighs the evidence developed in support of the Commissioner's final determination.  New evidence that is submitted to the Appeals Council should not be cumulative of the evidence already in the administrative record, and cumulative evidence, by definition, cannot serve as a predicate for finding that there is a lack of substantial evidence in support of the Commissioner's final determination.  See Tai-Fatt v. Barnhart, 04 Civ. 9274 (GWG), 2005 WL 3206552, at *12 (S.D.N.Y. Nov. 30, 2005).

The balance of the additional evidence submitted to the Appeals Council, however, falls within this category of cumulative evidence already in the administrative record and does not raise the likelihood that the Commissioner would have decided the Plaintiff's application for disability insurance benefits differently.  One of the letters submitted to the Appeals Council was authored by Plaintiff's wife, Doctor Robyn Deutsch-Sokol, who previously testified at the Plaintiff's administrative hearing and provided only a brief synopsis and history of some of Plaintiff's alleged disabilities.  R. 350-51.  Dr. Deutsch-Sokol's letter offered no new evidence substantiating Plaintiff's claim of a disability and was properly designated and treated as cumulative in nature by the Appeals Council.

Dr. Slobodan Aleksic submitted a letter to the Appeals Council in which he alleges that he treated Plaintiff since January of 1994.  R. 348-49.  Plaintiff, however, did not list Dr. Aleksic as a treating physician in any of his applications for disability insurance benefits.  Dr. Aleksic, moreover, failed to produce any medical records he kept or maintained in the course of allegedly treating the Plaintiff during the Plaintiff's disability insurance period.  Dr. Aleksic additionally

admitted in his letter that his opinion about the Plaintiff's condition in 1994 was based on records submitted during the Plaintiff's administrative hearing before Administrative Law Judge Katz. R. 348-49. Based upon Dr. Aleksic's own statements, therefore, it appears clear to the undersigned that Dr. Aleksic does not qualify as a treating physician and that the commentary offered by Dr. Aleksic is merely cumulative of the scant evidence in the administrative record pertaining to Plaintiff's alleged disabilities.

Lastly, Dr. Dennis Gage submitted an opinion letter about the Plaintiff's condition and purported disabilities which does not specify when it was rendered or upon what specific information it is based. R. 347 ("I have reviewed [Plaintiff's] records."). Dr. Gage's assessment, which consists of a terse single paragraph, is conclusory in nature and is not supported by any independent medical analysis or citation to other objective medical documentation. Dr. Gage's one paragraph assessment does not alter the balance of the evidence in the administrative record or countenance a result different than the one reached by the Administrative Law Judge.

As explained above, although a currently treating physician of a Plaintiff can render a retrospective diagnosis and opinion of a Plaintiff's condition, see Dousewicz, 646 F.2d at 774, such a retrospective opinion must be supported by medical evidence and is only entitled to the deferential treating physician standard by the Administrative Law Judge when there exists such medical evidence supporting the retrospective opinion. In this case, however, even if any of the aforementioned physicians who submitted opinion letters to the Appeals Council could be designated as treating physicians, none of these letters is accompanied by objective medical evidence that supports the conclusions offered by the respective doctors. I therefore conclude, and respectfully recommend that Your Honor should conclude, that the weight of the evidence in

the administrative record outweighs the letters' possible evidentiary value and do not alter the Administrative Law Judge's final determination that the Plaintiff was not disabled.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the Commissioner's motion for judgment on the pleadings should be granted, that the Plaintiff's motion for judgment on the pleadings should be denied, and that the Plaintiff's Complaint seeking judicial review of the Commissioner's final decision denying the Plaintiff social security disability benefits should be dismissed.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: August 15, 2008
White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Kenneth M. Karas, U.S.D.J.

Counsel of Record for Plaintiff and the Commissioner of Social Security